## HUGER *v.* CUNNINGHAM *et al.,* executors.

1. In an accounting between partners, all the partnership debts must be taken into account, and it is wholly indifferent to whom the debt is owing, if the obligation be just. Hence, in a petition by the executors of a deceased partner against the survivor for an accounting of partnership transactions, it is not erroneous to allow an amendment alleging that the plaintiffs, since the filing of the suit, had paid a debt due by the partnership which was prayed to be taken into consideration in adjusting the balances between the partners.

2. Equity has jurisdiction in cases of accounting and settlement between partners. This jurisdiction is not lost because discovery from the defendant is waived by the plaintiffs.

3. Testimony that one partner, previously to signing written articles of partnership, had made the same offer of partnership to a relative, who had declined it, is not relevant in construing the partnership agreement. A letter from one of the partners to his factor, authorizing his copartner to draw on his private account for funds in conducting the partnership enterprise, was properly excluded on the ground of irrelevancy.

4. An allegation in a petition, that under the facts pleaded the plaintiff is entitled to recover a certain amount, is not an estoppel in judicio which precludes an amendment that under the same facts the plaintiff is entitled to a larger recovery.

5. Under the articles of partnership in this case, where the partnership venture resulted in loss, the proceeds of the partnership business should be first deducted from the expense account, and two thirds of the actual loss charged to plaintiffs' testator and one third to the defendant.

6. When the business of a partnership was the cultivation of rice, and one of the partners died before the maturity of the crop, and, after the crop was harvested, on demand of the executors of the deceased partner there was an equal division of the rice, but no undertaking to construe the contract or make a final settlement, such transaction did not amount to an accord and satisfaction which would estop the executors from denying that the survivor was entitled to one half of the crop.

7. Defects in pleading which are of an amendable nature, and matters which might have been pleaded in abatement, can not be urged in arrest of a judgment authorized by the pleadings.

Argued June 11,—Decided November 12, 1906.

Equitable petition. Before Judge Seabrook. Chatham superior court. February 3, 1906.

The plaintiffs below, as executors of J. H. M. Clinch, deceased, filed their petition against J. A. Huger and W. G. Morrell, the case made by the petition being substantially as follows: On May 30, 1900, Clinch and Huger entered into a partnership agreement to plant rice on what was known as the Refuge Plantation, in Camden county, Ga. This agreement was in writing and contained

these recitals: "It is agreed between Col. J. H. M. Clinch and J. A. Huger that the said J. A. Huger shall plant the rice crop at the Refuge Plantation, and attend to the same for the season of 1900-1901, upon the following terms, viz.: Two thirds of the expense of said crop is to be charged to Col. Clinch and one third of the expense to J. A. Huger. Upon the successful harvesting and marketing of the crop, the above said parties, viz. Col. J. H. M. Clinch and J. A. Huger, are to share equally the net profits arising from same. While, on the other hand, should the crop from any unforeseen reasons, such as storms, hurricanes, or the acts of providence, be a failure, then the said Col. Clinch is to be charged with 2/3 the expense of the said crop and J. A. Huger 1/3 the expense of same." After the expiration of the season mentioned in this agreement, the parties continued to plant rice on the plantation, under the same understanding for each successive season, down to and including the season of 1904-5. W. G. Morrell acted as the factor of the partnership in the planting of the rice crops, and Clinch at all times had on deposit with him more than sufficient funds to provide for two thirds of the expenses of the same. The indebtedness of Morrell to Clinch individually is $9,283.15, whereas the partnership of Clinch & Huger is indebted to Morrell in the sum of $2,902.20. From the operation of the rice plantation, the partnership made a net profit of $27,000.93; and upon a proper division of the profits and losses between the partners, crediting each with one half of the net profits and charging Clinch with two thirds and Huger with one third of the losses, Clinch is entitled to $12,851.24 as his share of the net profits, and Huger to $14,149.69. Clinch has received from the partnership operations $14,138.95, an excess of $1,287.71 over his interest in the profits, while Huger has received $15,764.18 from the partnership, when only entitled to receive $14,149.69. The partnership is indebted to Morrell, who acted as its factor, in the amounts thus overdrawn by the partners. A part of the rice-straw from the crop of 1904-1905 is still on hand and in the possession of Huger, and each partner is entitled to one half of whatever amount may be realized therefrom. Huger refuses to come to an accounting and settlement with plaintiffs, and Morrell has declined to pay them the amount due to Clinch individually, saying that as there is a dispute between the partners, he can not and will not pay over this amount until the dispute is set-

tled. The plaintiffs alleged, that the accounts were complicated and difficult, that they had no remedy at law, and that the case was one properly cognizable only in a court of equity. They prayed that Huger be brought to an accounting and settlement of the partnership affairs, and be decreed to pay $1,614.49 as his proportion of the indebtedness to Morrell, plaintiffs standing ready to pay him the sum of $1,287.71 for which they were accountable; that plaintiffs have judgment against Morrell for the amount, less that sum, due by him to Clinch individually, or be allowed to recover the balance due after deducting the partnership's indebtedness to him, and have judgment against Huger for his proportion of such indebtedness, etc.

The defendant Huger demurred to the petition generally, and also upon the following specific grounds: First, the petition is multifarious, in that it joins two separate and distinct claims and causes of action against different parties, one growing out of a course of dealing between Clinch individually and Morrell individually, and the other claim being one against Huger arising out of the transactions of the partnership; second, there is a misjoinder of parties, in that Morrell and Huger are not liable to be sued in the same action, there being no privity between them; third, there is no reason why Morrell should be a party to a cause for winding up the affairs of the partnership, he being merely the factor of the firm and one of its creditors and not a party to the partnership agreement or a necessary party defendant to a suit for an accounting between the executors of Clinch and the surviving member of the firm of Clinch & Huger; fourth, the petition discloses on its face that the accounts are not, as alleged, complicated and difficult, but are simple and depend entirely upon the construction to be put upon the contract of partnership; and, fifth, no grounds for an accounting in equity are shown, since the plaintiffs waive discovery, the very ground upon which the jurisdiction of a court of equity over suits for an accounting and settlement is based.

The defendant Huger also filed an answer, in which he admitted entering into and operating under the articles of partnership, but denied being indebted to plaintiffs in any amount, and claimed they were due him $2,650.88 and were liable to Morrell in the sum of $2,902.20. The defendant averred that under the terms of the agreement, which was renewed from year to year, the expenses of

the crop were, whenever the crop was a failure, to be charged one third to him and two thirds to Clinch, and that the gross proceeds or receipts from the crop were to be equally divided between them. It was further stated in the answer that the plaintiffs, acting as the executors of Clinch, had claimed there were no debts of the partnership, and had demanded of and received from the defendant, as surviving partner, one half of all the rice raised by the firm during the season of 1904-5, in full of the share of the crop belonging to the estate of Clinch; and defendant insisted that the plaintiffs, having, with full knowledge of the facts, settled with him for the rice on this basis, and having admitted in their pleadings that they were only entitled to one half of the proceeds of the straw, were estopped to deny that he was entitled to one half of the crop of the last season or to contend that under a proper construction of the agreement he was not entitled to one half of the proceeds of the crop of 1903-4, which was conceded to have been a failure.

Over the objection of the defendant, the court allowed the plaintiffs to amend their pleadings by setting forth the fact that since the filing of their petition they had come to a full settlement with Morrell by paying him the sum of $2,902.20, the total partnership indebtedness to him; and the plaintiffs were permitted to dismiss the suit as to him, and to so amend their petition as to set forth the claim that they were entitled to receive two thirds and Huger only one third of the proceeds of the rice-straw from the crop of 1904-5. After the petition was thus amended, the demurrer thereto was overruled. The case proceeded to a trial on the merits, and, after the conclusion of the evidence, the court directed a verdict in favor of the plaintiffs. The defendant moved in arrest of judgment, and also made a motion for a new trial; both motions were overruled, and exception was duly taken, not only as to the judgments thereon, but also to the judgment upon the demurrer to the plaintiffs' petition.

*E. S. Elliott* and *W. G. Charlton,* for plaintiff in error.
*Lawton & Cunningham,* contra.

EVANS, J. (After stating the facts.)

1. When the amendment to the plaintiff's petition, the substance of which is disclosed by the foregoing statement of facts, was proffered, the defendant Huger objected to its allowance, on the grounds that it did not specify the date of the alleged payment of the debt

to Morrell, did not state specifically whether the payment was made before or after the filing of defendant's answer, and, Morrell being a party to the original petition, the amendment dismissing the action as to him (there being no objection to its dismissal) did not strike the prayers of the petition relating to the performance prayed as to Morrell and Huger.    While it is a rule of law to which there is, perhaps, no exception, either at law or in equity, that to recover at all there must be some cause of action at the commencement of the suit, yet the allegation that the plaintiffs had discharged the debt due by the partnership to Morrell, and their effort to have this amount included in the accounting and settlement between the partners, did not operate as an abandonment of the original cause of action and the introduction of another in its stead.    The primary purpose of the original suit was to have an accounting and settlement between the partners.    An element in the partnership transactions was a certain debt which the plaintiffs alleged was due to Morrell.    Before there could be any final adjustment of the respective rights of the partners this debt due by the partnership had to be provided for.    It was perfectly immaterial whether the debt due to Morrell had been transferred to the plaintiffs or had been paid by them subsequently to the filing of the defendant's answer.    It would be indifferent to either of the partners, if the debt was a just obligation of the partnership, to whom it was due, as necessarily it had to be taken into consideration in adjusting the balance between the different partners.

2. The striking of Morrell as a party defendant eliminated all objections on the ground of multifariousness or misjoinder of parties, urged by way of demurrer.    The remaining grounds of the demurrer were to the effect that there was no equity in the petition, because it showed on its face that the accounts were not complicated, and discovery was waived.    There was a distinct allegation in the petition that the accounts between the partners were complicated and difficult, and the demurrer admitted the truth of this allegation. But, aside from the nature of the accounts between the partners, a court of equity has jurisdiction in all cases of an accounting and settlement between partners.    Civil Code, § 3989; *Bennett* v. *Woolfolk,* 15 *Ga.* 213; *Epping* v. *Aiken,* 71 *Ga.* 682.    It is not necessary, in a suit between partners for an accounting, that discovery should be prayed of the partner against whom the petition is filed; if the

complaining partner desires to search the conscience of the defendant as to the partnership affairs, he may pray discovery; if not, he may expressly waive discovery, without affecting his right to have an accounting in a court of equity. Under the Civil Code, § 4962, if discovery is sought, it must be specially prayed; but the failure to pray discovery, or an express waiver of discovery, does not change the equitable character of the suit. It is the partnership relation which gives equity its jurisdiction. In some instances, in suits between partners for an accounting, where proper allegations are made and the proof shows that a money verdict can fully settle the rights in dispute, the plaintiff may proceed at law even against his partner. *Pool* v. *Perdue*, 44 *Ga.* 459. But that in certain instances a court of law may have concurrent jurisdiction with a court of equity, in an accounting and settlement between partners, affords no reason for holding that the jurisdiction of a court of equity is necessarily ousted. The nature of the accounting prayed for shows that the remedy at law is not as efficacious as the plaintiff would be entitled to in equity; and in no view of the matter did the court err in overruling the demurrer to the petition as amended.

3. On the trial the defendant tendered in evidence the following letter: "Savannah, Ga., Jan. 8, 1900. Mr. W. G. Morrell, City. Dear Sir: Mr. J. A. Huger is authorized by me to draw on you for such amounts as are weekly needed by him for the purpose of planting the Refuge Plantation, and such amounts as he draws you are authorized to pay and charge to my account. [Signed] J. H. M. Clinch." This letter was repelled from evidence, upon the objection that it was irrelevant and immaterial. The contract of partnership established the relation between the parties to the case, and we cannot see how this letter in any wise threw any light upon any issue involved. The court also refused to allow the defendant to introduce evidence to the effect that the testator of the plaintiffs had made the same offer as to partnership to his nephew, who had declined it. This evidence was properly excluded, because it was utterly immaterial what proposition relating to the management of the rice plantation had been submitted by the plaintiffs' testator to a third person prior to the partnership arrangement made with the defendant.

4. In the original petition the plaintiffs alleged that they were

entitled to receive one half of the proceeds realized from the sale of all the rice-straw on hand at the time of the filing of the suit. By amendment to their petition they insisted that they were entitled to two thirds of such proceeds. On the trial the defendant contended that as the plaintiffs had admitted in their pleading that he was entitled to one half of the proceeds of the rice-straw, they were bound by this solemn admission in judicio, and were estopped from claiming any greater proportion of the proceeds which might be derived from a sale of this straw. The quantum of interest originally claimed by the executors was but a statement of their conclusion of what they were entitled to under their construction of the contract of partnership; if, subsequently, they discovered that this conclusion was erroneous, and that their testator had a larger interest in the rice-straw, they were at liberty to amend their petition so as to claim this larger interest, and their previous allegation as to the interest which their testator had in the rice-straw would in no way bind them as an admission in judicio. Their allegations concerning this matter did not amount to an assertion of any fact, but stated merely a conclusion deducible from the facts alleged.

5. The disposition made of the case by the judge turned upon the construction of the contract of partnership. This contract provided for two contingencies, (1) if the operations of the rice season were successful, the net profits over and above the expenses (two thirds of which were to be charged to one of the partners and one third to the other) were to be equally divided between the partners; and (2) if, from any unforeseen reason, the crop should be a failure, and no net profits should be realized, but more or less loss sustained, then the expenses attending the raising of the crop, incurred by the partnership, should be borne by the partners—not equally, but by charging two thirds of the expense to one of them and one third to the other. In either event the crop, when gathered, would belong, not to one of the partners rather than to the other, but to the partnership; the proceeds arising from a sale of the crop would likewise belong primarily to the partnership, and the disbursement of these proceeds was to be in accordance with the usual and regular custom governing the affairs of a partnership, liabilities being discharged before any division of the proceeds was made between the partners, since neither was entitled to receive anything except his share of the net profits of the enterprise. Each, by obligating himself to

bear his stipulated portion of the expenses, became chargeable with that proportion of the partnership debts; and for all advances made by him to the partnership he would sustain towards it the relation of a creditor. Not until each member of the partnership came to a full settlement with it could he, as against his copartner, claim any right to a division of the proceeds of the crop; and not then, unless there remained in the hands of the partnership some amount representing the net profits of a "successful harvesting and marketing of the crop." The contract made provision for a division of only net profits arising from a successful harvest; a division of the proceeds of the crop, irrespective of the partnership liabilities or of the expenses of making the crop, was not contemplated. Provision was made for sharing the expenses of making a crop which for any unforeseen reason might prove "a failure," in which event it was certain that none of the proceeds of the crop would be left in the hands of the partnership to be distributed as net profits, and when the likelihood was that each of the partners would be called on to bear his portion of an actual loss sustained by the partnership by incurring expenses in excess of the gross amount realized from a sale of the crop. In a word, the parties to the contract stipulated for a division of net profits when there were net profits to be divided between them, and for payment by them of the losses of the venture when losses were sustained by the partnership operations. Ordinarily, losses of a partnership fall equally upon its members, and they share equally in net profits; the contract under consideration simply varied this general rule by providing that one of the partners should be chargeable with two thirds of the expenses incurred by the partnership, and that his copartner, though liable for only one third of the expenses in the event the venture was unsuccessful, should share equally with him in whatever profits might be realized by the partnership. The trial judge correctly so construed the contract; and under the undisputed facts concerning the status of the accounts between the partners the verdict which the jury were directed to return was demanded.

6. The partnership venture for the last season resulted in a loss. One of the partners, plaintiffs' testator, died before the maturity of the crop. After the crop was harvested, one of the executors applied to the defendant for a division of the rice into equal parts. Huger consented, and the rice was divided equally between himself

and the executors. The defendant contends that this division of the rice amounted to an accord and satisfaction, and that the executors were estopped from denying that the defendant was entitled to one half of the crop, irrespective of the question whether the crop did or did not yield a net profit for the season of 1904-5. There was no plea of accord and satisfaction, and the evidence was not such as to justify a finding that the executors and Huger had come to any settlement regarding the interest which the estate of the deceased partner had in the rice, under the articles of partnership. A surviving partner is entitled to the assets of a partnership for the purpose of winding up its affairs. While the executors had no legal right to demand a surrender to them of any portion of the partnership assets until the partnership business had been fully wound up by the surviving partner, he voluntarily agreed to divide the rice in kind, instead of insisting upon his right to dispose of it for the benefit of the partnership and its creditors. At the time of this physical division of the rice, they agreed upon its value per bushel, but did not undertake to construe the contract of partnership or to make any accord and satisfaction thereunder. The defendant was in no way misled into the belief that the executors would not subsequently call upon him for a full accounting under the terms of the contract, nor did they do anything which could operate upon them as an estoppel in asserting the rights of their testator under that contract.

7. The defendant moved in arrest of judgment upon various grounds. All of these related to matters which could have been urged by way of special demurrer or by plea in abatement. Defects in pleadings which are of an amendable nature should be taken advantage of by demurrer and can not be reached by a motion in arrest of judgment. Likewise, matters which may be pleaded in abatement afford no reason for arresting a judgment which is authorized by the pleadings. The verdict was authorized by the pleadings and demanded by the evidence, and the decree followed the verdict. There was, therefore, no merit in the attack made upon the decree.

*Judgment affirmed. All the Justices concur.*